## Mary Ryan O'Connell v. Killington, Ltd.

[665 A.2d 39]

No. 93-394

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 4, 1995

74

*Thomas M. French*, Brattleboro, for Plaintiff-Appellee.

*Allan R. Keyes* and *John J. Zawistoski* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

**Dooley, J.** Defendant ski area, Killington, Ltd., appeals from a negligence judgment against it based on defendant's failure to identify an unknown skier with whom plaintiff, Mary Ryan O'Connell, collided while skiing. On appeal, defendant claims that it owed no duty to plaintiff to identify the other skier, that plaintiff's claim is barred because the jury found that the accident resulted from an inherent risk of skiing, and that the court made errors in its charge to the jury. We reverse.

On January 12, 1990, plaintiff was skiing one of defendant's most difficult trails. She stopped to rest at the edge of the trail and was struck by another skier who lost control on the ice at the center of the trail. One of defendant's ski patrollers, along with plaintiff's sister, arrived at the scene shortly after the collision. Plaintiff requested that they obtain the name of the other skier. While the ski patroller was occupied with evaluating and stabilizing plaintiff's injury, plaintiff's sister spoke to the other skier, and requested that he follow plaintiff to the patrol station and identify himself. The skier failed to arrive at the patrol station as requested, and has never been identified. Plaintiff's injuries proved serious, and she and her husband filed suit against defendant in Rutland Superior Court, complaining that defendant negligently (1) failed to warn of the icy conditions on the trail, (2) failed to close the trail because of its dangerous condition and (3) failed to obtain the identity of the skier who had collided with plaintiff. Defendant denied those allegations and alleged that plaintiff's injuries were the consequence of her assumption of the inherent risks of skiing.

The trial court denied defendant's motion for directed verdict, both at the close of plaintiff's case and at the close of the evidence. The court submitted the failure-to-warn and the failure-to-identify counts to the jury. In its instructions to the jury on the failure-to-identify count, the court stated that the jury could find that defendant had assumed the duty to identify skiers involved in accidents based on its employee manual. This manual instructed defendant's employees to investigate thoroughly all accidents and to obtain the identity of everyone involved. The court instructed the jury that, to decide defendant's negligence on this count, it need determine only whether defendant had an opportunity to identify the other skier involved in the accident.

Based on the instructions, the jury found for defendant on the failure-to-warn count and on the failure to close the trail because it found that the accident resulted from an inherent risk of the sport of skiing. It further found that defendant had negligently failed to obtain the identity of the other skier and that its negligence was the proximate cause of the loss of plaintiff's "right to compensation" from that skier for her injuries. The jury awarded plaintiff $71,108.69 in damages, and the trial court denied defendant's motions for judgment notwithstanding the verdict and for a new trial.

Defendant raises three issues on appeal: (1) whether defendant had a duty to plaintiff to obtain the identity of the other skier who collided

with her; (2) whether plaintiff's failure-to-identify claim is precluded by the jury's finding that the accident and injury were a result of one or more inherent risks in the sport of skiing; and (3) whether certain instructions to the jury were proper. We agree with defendant's position on the first issue and, therefore, reverse. Because the case must be dismissed, we do not reach the second and third issues.

Defendant first claims that it owed plaintiff no duty to obtain the identity of the other skier, and that, accordingly, the trial court erred by instructing the jury that it could find that defendant's employee manual created such a duty. We agree.

In deciding this question, we first note that although the Vermont Legislature has passed a statute governing liability vis-a-vis the obtaining of names of skiers involved in a collision, see 12 V.S.A. § 1038(b)(2), this accident preceded the effective date of the statute so that it does not apply to this case. In any event, we conclude that the result in this case is the same under either the common law or the statute.[1]

Common-law negligence requires that there be a legal duty owed by defendant to plaintiff, breach of that duty, that such breach be the proximate cause of plaintiff's harm, and that plaintiff have suffered actual loss or damage. See *Langle v. Kurkul*, 146 Vt. 513, 517, 510 A.2d 1301, 1304 (1986). Clearly, the first of these elements, duty, is central to a negligence claim, and its existence is primarily a question of law. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 487, 622 A.2d 495, 499 (1993). The imposition of a duty is "'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'" *Id.* (quoting W. Prosser & W. Keeton, The Law of Torts § 53, at 358 (5th ed. 1984)).

Plaintiff's theory is that defendant had a duty to obtain the name of the skier who collided with her so plaintiff could sue that skier for her damages caused by the collision. Under plaintiff's theory, this duty arises, first and foremost, because plaintiff's injury occurred on

---

[1] 12 V.S.A. § 1038(b), effective June 21, 1994, provides, in part:

(b) Collision at a ski area.

(1) Any person who is involved in a collision with a skier at a ski area which results in bodily injury to any party to the collision has a duty to provide his or her name and local and permanent address to the other parties to the collision and shall proceed to the ski area first aid facility and provide that information to the ski area first aid personnel.

(2) No ski area, its employees or agents shall be held responsible for ensuring compliance with these duties by any person, nor shall it be liable in any way for a failure to obtain such person's name or address.

defendant's land, held open to the public for skiing. See Restatement (Second) of Torts § 314A(3) (1965).

In *Langle*, through the discussion of decisions from other states, we identified a number of factors to consider in determining whether a duty exits. See *Langle*, 146 Vt. at 519–20, 510 A.2d at 1304–05. These factors may include the degree of certainty that plaintiff suffered injury, the closeness of the connection between defendant's conduct and plaintiff's injury, the moral blame attached to defendant's conduct, the policy of preventing future harm, the burden to the defendant, the consequences to the community of finding a duty, and the availability and cost of insurance. *Id.* We think that an additional factor is more significant here — that is, that plaintiff seeks a duty to prevent purely economic loss. Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm. See Prosser & Keeton, *supra*, § 92, at 657; *Breslauer v. Fayston School Dist.*, 163 Vt. 416, 421, 659 A.2d 1129, 1132 (1995). Thus, a possessor of land open to the general public has a duty to aid and protect a member of the public coming on the land against unreasonable risk of "physical harm" only. Restatement (Second) of Torts § 314A(1)(a), (3). Physical harm does not include economic loss. See *Breslauer*, 163 Vt. at 421, 659 A.2d at 1132; Restatement (Second) of Torts § 7(3).

Our review of the decisions from other jurisdictions indicates that, absent a special relationship or undertaking, there is no duty to protect another's litigation interest. For example, there is no duty to preserve possible evidence for another party to assist that party in future litigation against a third party. See *Edwards v. Louisville Ladder Co.*, 796 F. Supp. 966, 969 (W.D. La. 1992); *Murphy v. Target Products*, 580 N.E.2d 687, 689 (Ind. Ct. App. 1991); *Koplin v. Rosel Well Perforators, Inc.*, 734 P.2d 1177, 1179 (Kan. 1987). A municipal police force has no duty to investigate motor vehicle accidents to identify possible tortfeasors. See *Jackson v. Heymann*, 314 A.2d 82, 85 (N.J. Super. Ct. Law Div. 1973); *Caldwell v. City of Philadelphia*, 517 A.2d 1296, 1303 (Pa. Super. Ct. 1986). Similarly, a taxicab company owes no duty to an injured passenger to identify the operator of the vehicle which caused the accident and injured the passenger. See *Stupka v. Peoples Cab Co.*, 264 A.2d 373, 374 (Pa. 1970). An exception to this rule may exist when there is some special relationship or duty arising from contract, statute or other special circumstance. See *Bondu v. Gurvich*, 473 So. 2d 1307, 1313 (Fla. Dist. Ct. App. 1984)

(claim against defendant hospital for destruction of evidence permitted because hospital had statutory duty to maintain medical records); *Koplin*, 734 P.2d at 1179.

This general principle has been applied to circumstances identical to those present here. Two reported decisions have concluded that a ski area has no duty to obtain the identity of a negligent skier who collides with and injures the another skier. See *Northcutt v. Sun Valley Co.*, 787 P.2d 1159, 1164 (Idaho 1990); *Phillips v. Wild Mountain Sports, Inc.*, 439 N.W.2d 58, 59–60 (Minn. Ct. App. 1989). Based on its prediction of our negligence law, the United States District Court for the District of Vermont determined that a ski area has no duty to identify the negligent skier. See *Emil v. Sherburne Corp.*, No. 80-22, slip op. at 2-3 (D. Vt. July 8, 1980). We agree with that court that the landowner's duty does not extend to "assisting the prosecution of claims arising from . . . torts" of third parties also using the land. *Id.* at 3.

We adopt the reasoning of the above decisions and conclude that no duty exists in these circumstances. Although our primary reason is the economic nature of the interest plaintiff asserts, other factors also point to the absence of a duty here. The main concern of defendant's ski patrol employees is and should be to give emergency medical assistance, remove the injured skier safely from the mountainside, and obtain necessary medical care. We are reluctant to dilute these critical, emergency duties with a responsibility to pursue and identify another skier. See *Caldwell*, 517 A.2d at 1301 (police duty at accident scene was to ensure victim's physical well-being in expediting her trip to the hospital, not to protect the financial interests of the plaintiff).

Moreover, even if the ski area had a duty to identify, it would have only a limited ability to enforce that duty against an uncooperative skier. This suggests that any recognition of a duty should come from the Legislature, which can provide the ski area the means to discharge the duty. In fact, the Legislature has provided, as of 1994, that a skier involved in a collision has the responsibility "to provide his or her name and local and permanent address to the other parties to the collision," but has also made clear that the ski area has no duty to obtain that identification. 12 V.S.A. § 1038(b).

Finally, we consider plaintiff's argument that there is a special circumstance present in this case that creates a duty. Plaintiff relies primarily on defendant's employee manual that establishes proce-

dures in case of ski accidents. These procedures include completing an accident reporting form, obtaining names and addresses of witnesses to the accident, obtaining witness statements and recording observations at the accident scene. Plaintiff argues that these provisions amount to the voluntary assumption of a duty to investigate accidents, particularly skier collisions. See Restatement (Second) of Torts § 323 (one who gratuitously undertakes "to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability" for "physical harm" resulting from negligent performance of undertaking).

Although we agree that defendant could voluntarily assume the duty to investigate accidents on behalf of injured skiers, we do not believe that the manual provisions show the assumption of this responsibility. The manual makes clear that the investigatory responsibilities placed on employees are for the protection of defendant with respect to suits against it. There is nothing to indicate that they were assumed as duties to third parties.

This exact claim was made and rejected in *Northcutt v. Sun Valley Co.*, 787 P.2d at 1164. The court held that imposing such requirements on employees did not create a duty to skiers to act on the skiers' behalf. This holding is consistent with our decisions in similar circumstances. In *Smith v. Day*, 148 Vt. 595, 538 A.2d 157 (1987), engineers on a railway train sued Norwich University when a university student shot at the train and injured them. We concluded that, although defendant sought to control its students via the imposition of numerous rules and regulations, it did not assume a duty to third persons to control the volitional criminal acts of the students. *Id.* at 598, 538 A.2d at 159. More recently, in *Larocque v. State Farm Insurance Co.*, 163 Vt. 617, 618, 660 A.2d 286, 288 (1995), we concluded that a liability insurer's employee manual, while directing employees to investigate claims in an efficient and cooperative manner, did not create any duty to a particular claimant to process the claim in good faith and consistent with the manual. Citing *Smith*, 148 Vt. at 598, 538 A.2d at 158–59, we stated that conducting one's "business in a way that [is] responsive to third-party claimants does not create a legally enforceable duty to do so with respect to a particular claimant." *Id.* To the extent defendant's policy intended that its employees identify colliding skiers to aid in litigation between

them, we believe that the rationale of *Larocque* is controlling and prevents use of defendant's manual to create a negligence duty.[2]

In adopting this position, we are necessarily rejecting the suggestion that the jury could decide whether the manual creates a duty to investigate and identify the other skier. The trial court's supplemental charge to the jury appears to have adopted this approach. As we indicated earlier, the existence of a duty is primarily a question of law. See *Denis Bail Bonds, Inc.*, 159 Vt. at 487, 622 A.2d at 499. Although the proper meaning of the employee manual may have been a question of fact for the jury, if a duty were present under some construction of the manual, the threshold question of whether the manual, however construed, could give rise to a duty was for the court. See *Smith v. Day*, 148 Vt. at 598 n.3, 538 A.2d at 159 n.3.

*Reversed.*

---

[2] Plaintiff relies upon a Colorado trial court decision that denied a ski area summary judgment in a failure-to-identify case similar to that here. *Burgener v. Keystone Arapahoe Ltd. Partnership*, No. 90 CV 215, slip op. at 3 (Colo. Dist. Ct., Summit County Sept. 5, 1991). In that case, the plaintiff argued successfully that the defendant assumed the responsibility to investigate in certain publications and materials that were distributed to the public, including the plaintiff. These were read and relied upon by the plaintiff's husband, who skied with her. This case has none of the public promotional and reliance elements of *Burgener* and is distinguishable on that basis.